UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                        )
JANE DOE,                               )
SUZETTE LINDGREN,                       )
ANDREW MOYER,                           )
on behalf of themselves and all others  )
similarly situated, and                 )    06-40133
MASSACHUSETTS COALITION                 )
FOR THE HOMELESS, and                   )
CENTRAL MASSACHUSETTS                   )
HOUSING ALLIANCE,                       )
                                        )    CIVIL ACTION NO.:
          Plaintiffs,                   )
                                        )
v.                                      )
                                        )
CITY OF WORCESTER,                      )
WORCESTER PUBLIC LIBRARY, and           )
WORCESTER PUBLIC LIBRARY                )
BOARD OF DIRECTORS,                     )
                                        )
          Defendants.                   )
                                        )
                                        )
```

Doe et al v. City of Worcester et al                                                    Doc. 1

## COMPLAINT

### I.  INTRODUCTION

1.  Plaintiffs bring this class action against defendants for declaratory judgment and

injunctive relief arising out of the Worcester Public Library's policy that restricts the

borrowing privileges of residents of homeless shelters, transitional housing programs,

adolescent programs and other facilities.  This action arises under the due process clauses

of both the federal and state constitutions; the equal protection clauses of both the federal

and state constitutions; the free speech provisions of both the federal and state

constitutions; and M.G.L. c. 78, section 33.

## II. JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and this Court's supplemental
   jurisdiction for plaintiffs' state law claim. Jurisdiction is conferred upon this Court by 28
   U.S.C. § 1343(3) and (4), relating to actions arising under 42 U.S.C. § 1983, and by 28
   U.S.C. § 1331. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and
   2202 and by Rule 57 of the Federal Rules of Civil Procedure.

## III. PARTIES

3. Jane Doe ("Ms. Doe") is a victim of domestic violence and currently resides at a shelter
   in Worcester County, Massachusetts with her child. Until December 2005, Ms. Doe and
   her child lived at Shepherd's Place II, a shelter located at 21 Ives Street in Worcester,
   Massachusetts.

4. Suzette Lindgren ("Ms. Lindgren") and Andrew Moyer ("Mr. Moyer") are married and,
   along with their eight-year-old daughter, reside at The Village at Cambridge Street, a
   shelter located at 510 Cambridge Street in Worcester, Massachusetts. Both are members
   of the Massachusetts Coalition for the Homeless.

5. The Massachusetts Coalition for the Homeless ("MCH") is a nonprofit corporation
   organized under the laws of the Commonwealth of Massachusetts. Its principal place of
   business is located at 15 Bubier Street, Lynn, Massachusetts 01901.

6. Central Massachusetts Housing Alliance ("CMHA") is a nonprofit corporation organized
   under the laws of the Commonwealth of Massachusetts. Its principal place of business is
   located at 7-11 Bellevue St, Worcester, Massachusetts 01609. CMHA manages The

2

Village at Cambridge Street, a shelter located at 510 Cambridge Street in Worcester, Massachusetts.

7. Defendant City of Worcester ("Worcester") is a municipality organized and existing under and pursuant to the laws of the Commonwealth of Massachusetts. Worcester has been authorized and empowered by the laws of the Commonwealth of Massachusetts to establish and maintain Defendant Worcester Public Library ("library").

8. Defendant Worcester Public Library Board of Directors ("Board") has been empowered by the Commonwealth of Massachusetts to have the custody and management of the library. The Board is comprised of twelve members who are appointed by the Worcester City Council.

## IV. CLASS ACTION ALLEGATIONS

9. Plaintiffs Jane Doe, Suzette Lindgren, and Andrew Moyer bring this action individually and on behalf of all other persons similarly situated, pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure. This class is composed of all current and future residents of homeless shelters in the City of Worcester, transitional housing programs in the City of Worcester, and teen/children's programs in the City of Worcester, and other facilities affected by the library's policy regarding borrowing limits on temporary residences.

10. The members of the class are so numerous as to make joinder impracticable.

11. The plaintiffs will fairly and adequately protect the interests of the class in this action for declaratory, injunctive and other relief.

12. The plaintiffs and their claims are typical of the claims of other members of the class.

3

13. There are questions of law and fact common to the class and they predominate over individual issues.

14. The defendants have acted or refused to act on grounds generally applicable to the class the plaintiffs represent as a whole, thereby making appropriate final injunctive and declaratory relief, pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, with respect to the class as a whole.

V.    STATEMENT OF FACTS

15. Since approximately 2004, the Worcester Public Library has enforced a written policy that restricts the borrowing privileges of residents of homeless shelters, transitional housing programs, teen/children's programs and other facilities. The policy, which was adopted by the library's Board of Directors, dictates that residents of such shelters and programs are limited to borrowing a maximum of two items.

16. After borrowing for the first time, other library patrons – including individuals who reside outside of the City of Worcester – are not limited to borrowing solely two items, as long as they do not reside in homeless shelters, transitional housing programs and/or teen/children's programs.

17. The library maintains a list of the names and addresses of what it deems to be homeless shelters, transitional housing programs, and teen/children's programs. Upon information and belief, residents who live at the addresses appearing on the library's list are subject to the library's policy. Upon information and belief, residents who live at shelters or transitional housing programs that are not on the library's list might also be subject to the library's policy.

4

18. The library notes on its website that "temporary residences" are limited to borrowing two items, but does not define the term "temporary residences."

A.    Jane Doe

19. Ms. Doe became homeless when she fled her abusive husband and the marital home in 2005. She and her child began living in the Shepherd's Place II Shelter in September 2005. Shortly after she moved in, in approximately late September or early October 2005, she went to the main branch of the Worcester Public Library to apply for a library card for herself and her child.

20. Ms. Doe asked for an application and filled it out. The application did not mention the library's policy about restricted access for shelter residents. When the library staff member asked for proof of residency, Ms. Doe showed a proof of residency document that she had obtained from her shelter. The library staff member told Ms. Doe that because she lived in a shelter, she could only borrow two books.

21. Upon information and belief, the library's list of the names and addresses of homeless shelters, transitional housing programs and teen/children's programs does not include Shepherd's Place II, Ms. Doe's residence at the time she applied for a library card.

22. In mid April 2005, Ms. Doe had two books out but needed to borrow an additional book, which was the required reading for her pain management class. Each week the class would read and discuss a chapter from the assigned book.

23. Ms. Doe went to the circulation desk to borrow the book, but the library staff member told her that because she lived in a shelter and already had two books out, she could not borrow any additional books.

24. Before moving into the shelter, Ms. Doe home-schooled her child and heavily relied upon her town's library for educational material. Once she moved into a shelter in Worcester, Ms. Doe decided to enroll her child in public school in part because of her inability to access the number of library books she would need in order to educate her child adequately.

25. Ms. Doe and her child have returned every book they have borrowed from the Worcester Public Library.

26. Because of the actions of the Defendants, Ms. Doe has suffered, and is continuing to suffer, and will suffer in the future great and irreparable loss and injury, including but not limited to, a deprivation of her right to access library items on an equal basis with other persons without regard to her address or status as a homeless individual.

B.    Suzette Lindgren and Andrew Moyer

27. Ms. Lindgren, Mr. Moyer and their daughter became homeless when Mr. Moyer was laid off from his job, and the family could no longer afford the rent for their apartment.

28. The family moved into The Village at Cambridge Street, a shelter located at 510 Cambridge Street in Worcester, on November 3, 2005.

29. Ms. Lindgren, Mr. Moyer and their daughter are avid readers and had to leave behind their extensive book collection when they moved into the shelter.

30. A few days after moving into the Village at Cambridge Street, the family went to the library main branch to apply for library cards. They asked for an application and filled it out. The application did not mention the library's policy about restricted access for shelter residents. When Ms. Lindgren and Mr. Moyer submitted their applications along

6

with The Village's proof of residency document, the library staff member told them that because they live at a temporary address, they could only borrow two books at a time.

31. Ms. Lindgren was embarrassed that the library staff member called attention to her homelessness in front of other people waiting in the circulation area.

32. Ms. Lindgren, Mr. Moyer and their daughter enjoy using the library's materials and have to visit the library several times a week because they can only borrow two materials at a time.

33. At approximately the end of January or early February 2006, Ms. Lindgren attempted to borrow more than two books using the automated self-checkout system, but the system would not check out any materials after two.

34. Ms. Lindgren and Mr. Moyer have asked the library to reconsider its residency policy and/or its determination of the family's "temporary residency" status several times. At approximately the end of January 2006, Ms. Lindgren asked if the children's room enforced the policy for homeless children. The library staff member told her that homeless children also could only borrow two books.

35. In approximately mid-February 2006, after living in the shelter and using the library regularly for over three months, Ms. Lindgren inquired at the main circulation desk about the status of her library privileges. She explained that she had been living at the same residence for over three months and that she did not consider it temporary. The library staff members told her that because she lived at that address she could only borrow two books.

36. The Village at Cambridge Street is included on the list of homeless shelters, transitional housing programs and teen/children's programs that the library maintains.

7

37. Ms. Lindgren, Mr. Moyer and their daughter have returned every book they have borrowed from the Worcester Public Library.

38. Because of the actions of the Defendants, Ms. Lindgren and Mr. Moyer have suffered, and are continuing to suffer, and will suffer in the future great and irreparable loss and injury, including but not limited to, a deprivation of their right to access library items on an equal basis with other persons without regard to their address or status as homeless individuals.

C.    Massachusetts Coalition for the Homeless (MCH)

39. The Massachusetts Coalition for the Homeless ("MCH") has at the core of its mission the eradication of homelessness in the Commonwealth of Massachusetts. To achieve this aim, it advocates for the homeless or those at risk of homelessness in areas including the availability of decent, accessible, affordable housing; adequate income maintenance programs; medical care; mental health services; social services; education; job training; and employment.

40. MCH is a membership organization, which develops and maintains a network of members and supporters in order to further its goal of eradicating homelessness.

41. Among MCH's Worcester members are Ms. Lindgren and Mr. Moyer.

42. The library's policy restricting borrowing privileges for residents of homeless shelters, transitional housing programs, teen/children's programs and other facilities has caused MCH's members to suffer injury, including but not limited to, a deprivation of their right to access library items on an equal basis with other persons without regard to their address or status as homeless individuals.

8

D.    Central Massachusetts Housing Alliance (CMHA)

   43. The Central Massachusetts Housing Alliance ("CMHA") supports the homeless and near

       homeless of Worcester County through the provision of prevention programs, shelter and

       support services, access to affordable housing, and education.  CMHA also operates the

       Village at Cambridge Street, a shelter that hosts up to 45 families at any given time.

   44. On information and belief, the Village at Cambridge Street has been included on the

       library's list of shelters or transitional housing programs since approximately August

       2005.

   45. Families living at the Village at Cambridge Street, including Ms. Lindgren, Mr. Moyer

       and their daughter, have been injured by the library's policy restricting borrowing

       privileges.

   46. CMHA's mission of fostering educational opportunities and self-sufficiency for the

       residents of the Village at Cambridge Street has been undermined by the curtailment of

       its residents' library borrowing privileges.

VI.    CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF

   47. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1

       through 46, as if fully set forth herein.

   48. Defendants, by restricting the library privileges of plaintiffs and the members of the

       plaintiff class on account of their address and/or status as homeless individuals, have

       denied plaintiffs and the members of the plaintiff class equal protection of the law in

       violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §

       1983.

9

## SECOND CLAIM FOR RELIEF

49. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

50. Defendants, by restricting the library privileges of plaintiffs and the members of the plaintiff class on account of their address and/or status as homeless individuals, have denied plaintiffs and the members of the plaintiff class equal protection of the law in violation of Articles 1, 6, and 7 of the Declaration of Rights of the Massachusetts Constitution.

## THIRD CLAIM FOR RELIEF

51. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

52. Defendants, by restricting the library privileges of plaintiffs and the members of the plaintiff class on account of their address and/or status as homeless individuals, have interfered with the fundamental First Amendment rights of the plaintiffs and the members of the plaintiff class, in violation of the First Amendment and the equal protection clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

53. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

54. Defendants, by restricting the library privileges of plaintiffs and the members of the plaintiff class on account of their address and/or status as homeless individuals, have interfered with the fundamental free speech rights of the plaintiffs and the members of the

10

plaintiff class, in violation of the free speech and equal protection guarantees of Articles

1, 6, 7 and 16 of the Declaration of Rights of the Massachusetts Constitution.

## FIFTH CLAIM FOR RELIEF

55. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1

through 46, as if fully set forth herein.

56. The First Amendment encompasses the right to receive information and ideas, including

the right to access materials at a public library.

57. By restricting plaintiffs' and plaintiff class members' access to library materials,

defendants have violated their right to receive information under the First Amendment to

the United States Constitution and 42 U.S.C. § 1983.

## SIXTH CLAIM FOR RELIEF

58. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1

through 46, as if fully set forth herein.

59. The Massachusetts Constitution encompasses the right to receive information and ideas,

including the right to access materials at a public library.

60. By restricting plaintiffs' and plaintiff class members' access to library materials,

defendants have violated their right to receive information under Article 16 of the

Declaration of Rights of the Massachusetts Constitution.

## SEVENTH CLAIM FOR RELIEF

61. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1

through 46, as if fully set forth herein.

11

62. In restricting the borrowing privileges of "temporary" residents of homeless shelters, transitional housing programs, and teen/children's programs, without defining those terms and without regard to whether or not a particular program appears on the library's list and/or is housing individuals on a temporary basis, defendants have failed to provide minimal guidelines and standards to govern enforcement of its policy.

63. Such action is impermissibly vague in violation of the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

## EIGHTH CLAIM FOR RELIEF

64. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

65. In restricting the borrowing privileges of "temporary" residents of homeless shelters, transitional housing programs and teen/children's programs, without defining those terms and without regard to whether or not a particular program appears on the library's list and/or is housing individuals on a temporary basis, defendants have failed to provide minimal guidelines and standards to govern enforcement of its policy.

66. Such action is impermissibly vague in violation of Article 16 of the Declaration of Rights of the Massachusetts Constitution.

## NINTH CLAIM FOR RELIEF

67. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

68. Plaintiffs have a liberty and/or property interest in full and equal access to materials from the Worcester Public Library.

12

69. Defendants' failure to provide plaintiffs and the members of the plaintiff class with adequate notice prior to restricting their library privileges, including the grounds for the restrictions and an opportunity to be heard to challenge such restrictions, violates the rights of the plaintiffs and the members of the plaintiff class to due process in violation of the Fourteenth Amendment to United States Constitution and 42 U.S.C. § 1983.

## TENTH CLAIM FOR RELIEF

70. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

71. Plaintiffs have a liberty and/or property interest in full and equal access to materials from the Worcester Public Library.

72. Defendants' failure to provide plaintiffs and the members of the plaintiff class with adequate notice prior to restricting their library privileges, including the grounds for the restrictions and an opportunity to be heard to challenge such restrictions, violates the rights of the plaintiffs and the members of the plaintiff class to due process in violation of Article 10 of the Declaration of Rights of the Massachusetts Constitution.

## ELEVENTH CLAIM FOR RELIEF

73. Plaintiffs reallege and incorporate the facts and allegations contained in Paragraphs 1 through 46, as if fully set forth herein.

74. The library is required to establish a policy for the use of materials in accordance with the standards adopted by the American Library Association. See M.G.L. c. 78, section 33.

75. Article I of the American Library Association's Library Bill of Rights provides, "Books and other library resources should be provided for the interest, information, and enlightenment of all people in the community the library serves." See American Library

Association's Library Bill of Rights, Adopted June 18, 1948, by the ALA Council; last reaffirmed January 23, 1996.

76. Article V of the American Library Association's Library Bill of Rights provides, "A person's right to use a library should not be denied or abridged because of origin, age, background, or views." See American Library Association's Library Bill of Rights, Adopted June 18, 1948, by the ALA Council; last reaffirmed January 23, 1996.

77. Interpreting Article V of the Library Bill of Rights specifically in the context of economic status, the American Library Association states, "Librarians and governing bodies should look for alternative models of library administration and methods of library administration that minimize distinction among users based on their economic status or financial condition." See American Library Association, "Economic Barriers to Information Access: An Interpretation of the Library Bill of Rights," Adopted by the ALA Council, June 30, 1993.

78. The American Library Association's policy manual concerning library services for the poor states, "The American Library Association promotes equal access to information for all persons, and recognizes the urgent need to respond to the increasing number of poor children, adults, and families in America. These people are affected by a combination of limitations, including illiteracy, illness, social isolation, homelessness, hunger, and discrimination, which hamper the effectiveness of traditional library services.  Therefore it is crucial that libraries recognize their role in enabling poor people to participate fully in a democratic society, by utilizing a wide variety of available resources and strategies…. The American Library Association shall implement these objectives by: 1. Promoting the removal of all barriers to library and information services…. " See

14

American Library Association, Policy Manual, Library Services for the Poor.

79. The American Library Association Code of Ethics states, "We provide the highest level of service to all library users through appropriate and usefully organized resources; equitable service policies; equitable access…" See American Library Association Code of Ethics, Adopted by the ALA Council, June 28, 1995.

80. Interpreting the Library Bill of Rights, the American Library Association states, "Attempts to restrict access to library materials violate the basic tenets of the Library Bill of Rights." See American Library Association, "Restricted Access to Library Materials: An Interpretation of the Library Bill of Rights," Adopted by the ALA Council, February 2, 1973; last amended June 30, 2004.

81. Defendants' policy that restricts the borrowing privileges of residents of homeless shelters, transitional programs, and teen/children's programs, in failing to comply with the standards adopted by the American Library Association, violates M.G.L. c. 78, section 33.

VII.    PRAYERS FOR RELIEF

Plaintiffs respectfully ask that this Court:

1.  Enter an order certifying the class;

2.  Enter preliminary and permanent injunctions enjoining the defendants from enforcing the defendants' policy that restricts the borrowing privileges of residents of homeless shelters, transitional homes and teen/children's programs;

3.  Enter preliminary and permanent injunctions enjoining the defendants from failing or refusing to grant plaintiffs the same or equivalent library privileges granted to other patrons regardless of their address, residence and/or status as homeless individuals;

15

4. Declare that the library's policy restricting the borrowing privileges of residents of homeless shelters, transitional housing programs, teen/children's programs and other facilities is unlawful in that it violates the due process clauses of both the federal and state constitutions; the equal protection clauses of both the federal and state constitutions; the free speech provisions of both the federal and state constitutions; and the rights of library patrons guaranteed by M.G.L. c. 78, section 33.

5. Order defendants at their expense to notify members of the plaintiff class that their full and equal library privileges have been restored;

6. Award plaintiffs their costs and reasonable attorneys' fees; and

7. Provide such other relief as the Court deems just and proper.

Respectfully submitted
On behalf of plaintiffs,

Date: July 6, 2006

Jonathan L. Mannina, BBO # 636492
Kate J. Fitzpatrick, BBO # 664711
Legal Assistance Corporation
  of Central Massachusetts
405 Main Street, Fourth Floor
Worcester, Massachusetts 01608
(508) 752-3718

Date: July 6, 2006

John Reinstein, BBO # 416120
American Civil Liberties Union
  of Massachusetts
211 Congress Street, Suite 300
Boston, Massachusetts 02110
(617) 482-3170

16