UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

2

| | |
|---|---|
| JANE DOE,<br>SUZETTE LINDGREN,<br>ANDREW MOYER,<br>on behalf of themselves and all others<br>similarly situated, and<br>MASSACHUSETTS COALITION<br>FOR THE HOMELESS, and<br>CENTRAL MASSACHUSETTS<br>HOUSING ALLIANCE,<br><br>       Plaintiffs,<br><br>v.<br><br>CITY OF WORCESTER,<br>WORCESTER PUBLIC LIBRARY, and<br>WORCESTER PUBLIC LIBRARY<br>BOARD OF DIRECTORS,<br><br>       Defendants. | CIVIL ACTION NO.:<br><br>**06-4013** <br><br>MEMORANDUM IN SUPPORT<br>OF MOTION FOR<br>CERTIFICATION OF CLASS |

## I.    INTRODUCTION

Plaintiffs Jane Doe, Suzette Lindgren and Andrew Moyer bring this action individually

and on behalf of all other similarly situated residents, challenging the constitutionality of

defendants' policy that restricts the public library borrowing privileges of residents of homeless

shelters, transitional housing programs, teen/children's programs and other facilities.

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs now move for

class certification in this action. The Court should grant plaintiffs' motion since this action

satisfies the four elements of Rule 23(a) as well as the requirements of Rule 23(b)(2).

## II.     FACTUAL BACKGROUND

Since approximately 2004, the Worcester Public Library ("library") has enforced a policy that restricts the borrowing privileges of residents of homeless shelters, transitional housing programs, teen/children's programs and other facilities. See Attachment A. To this end, the library maintains a list of the names and addresses of Worcester area homeless shelters, transitional housing programs, and teens/children's programs (see Attachment B), and also says on its website that temporary residences have restricted borrowing privileges. See Attachment C. The policy, which was adopted by the library's Board of Directors ("Board"), dictates that residents of such shelters and programs are limited to borrowing a maximum of two items. With the limited exception of first-time borrowers, other library patrons-- including individuals who reside outside of Worcester or students who live in Worcester temporarily -- are not limited to borrowing two items, as long as they do not reside in such homeless shelters, transitional housing programs, or teen/children's programs as determined by the library. As a result of this policy, named plaintiffs Jane Doe, Suzette Lindgren and Andrew Moyer have been denied full and equal access to the information, facilities and services of the Worcester Public Library based solely on their residency and/or homelessness status.

Jane Doe ("Ms. Doe") became homeless when she fled her abusive husband and the marital home in 2005. She and her child began living in the Shepherd's Place II Shelter in Worcester in September 2005. Very soon after she moved in, Ms. Doe went to the main branch of the Worcester Public Library to apply for a library card for herself and her child. Upon presenting proof of shelter residency, she was told by a library staff member that she would be limited to two items because she was living in a shelter. At the time Ms. Doe applied for her

2

library card, Shepherd's Place II Shelter, upon information and belief, was not included on the library's list of shelters or transitional housing programs.

On November 3, 2005, Suzette Lindgren ("Ms. Lindgren") and Andrew Moyer ("Mr. Moyer"), a married couple with an eight-year-old daughter, moved into the Village at Cambridge Street, a shelter located at 510 Cambridge Street in Worcester. A few days later, the family went to the library's main branch to apply for library cards. Upon presenting proof of shelter residency, they were told by a library staff member that they were limited to two items because they lived in a shelter.

These three individual plaintiffs and the class they seek to represent have been denied full and equal access to the information, facilities and services of the Worcester Public Library based solely on their residency and/or homelessness status. Plaintiffs' complaint alleges that defendants, by restricting their access to library materials, have violated the due process clauses of both the federal and state constitutions; the equal protection clauses of both the federal and state constitutions; the free speech provisions of both the federal and state constitutions; and M.G.L. c. 78, section 33.

## III.    PROPOSED CLASS DEFINITION

The proposed class is composed of all current and future residents of homeless shelters in the City of Worcester, transitional housing programs in the City of Worcester, and adolescent programs in the City of Worcester, and other facilities affected by the library's policy regarding borrowing limits on temporary residences.[1]

---

[1]    Upon information and belief, the library's policy has been applied to facilities that are not generally considered shelters, transitional housing programs, or teen/children's programs. For example, the library's list of "transitional housing programs" includes AdCare and Worcester State Hospital. AdCare is not a residential facility; it is a provider of either outpatient substance abuse treatment or inpatient treatment to recovering addicts. Similarly, Worcester State Hospital, a psychiatric facility, provides services on a short-term basis to confined patients who cannot leave the hospital, and to longer-term residents who may be able to earn privileges to leave.

3

## IV. THIS CASE IS APPROPRIATE FOR CLASS CERTIFICATION

In order to be certified as a class, the plaintiffs must, pursuant to the Federal Rules of
Civil Procedure, establish that they meet the four prerequisites of Rule 23(a), and that they
satisfy one of the criteria under Rule 23(b). Fed. R. Civ. P. 23; see Yaffe v. Powers, 454 F.2d
1362, 1366 (1st Cir. 1972). Under Rule 23(a), the plaintiffs must establish that the class is so
numerous that joinder of all members is impracticable; that there are questions of law or fact
common to the class; that the claims of the plaintiffs are typical of the claims of the class; and
that the plaintiffs will fairly and adequately protect the interests of the class. See Griffin v.
Burns, 570 F.2d 1065, 1072 (1st Cir. 1978). Under the section of Rule 23(b) applicable here, the
plaintiffs must demonstrate that the defendants have acted or refused to act on grounds generally
applicable to the class, thereby making appropriate final injunctive relief or corresponding
declaratory relief with respect to the class as a whole. Fed. R. Civ. P. 23(b)(2); see Yaffe, 454
F.2d at 1366. Plaintiffs satisfy all of these conditions.

### A.    The Class Meets the Prerequisites of Rule 23(a)

#### 1)    The Class Is So Numerous That Joinder of All Members Is Impracticable

The facts and circumstances of each case are to be taken into account when determining
numerosity under Rule 23(a)(1). Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st
Cir.1985)(citations omitted), cert. denied, 576 U.S. 1172 (1986). The numerosity requirement of
Rule 23(a) "is not a difficult burden to satisfy...." In re Cardizem CD Antitrust Litig., 200 F.R.D.
297, 303 (E.D.Mich.2001). For purposes of Rule 23(a)(1), the plaintiffs need not establish the
precise number of class members. Carpenter v. Davis, 424 F.2d 257, 260 (5th Cir. 1970);
Westcott v. Califano, 460 F. Supp. 737, 744 (D. Mass. 1978). This is particularly true where the
plaintiffs seek only declaratory and injunctive relief. McCuin v. Secretary of Health and Human

4

Servs., 817 F.2d 161, 167 (1st Cir. 1987); Doe v. Charleston Area Med. Ctr., Inc., 529 F.2d 638, 645 (4th Cir. 1975)(class size may be speculative when only equitable relief is sought). Plaintiffs may present circumstantial evidence or make statistical estimates of the number of class members. See Ragsdale v. Turnock, 625 F. Supp. 1212, 1219-20 (N.D. Ill. 1985), aff'd in part and vacated in part on other grounds, 841 F.2d 1358 (7th Cir. 1985)(finding circumstantial evidence sufficient); In re Tetracycline Cases, 107 FRD 719, 728-29 (W.D. Mo. 1985)(allowing plaintiffs to introduce statistical data and studies).

In the case at bar, the total homeless population in the City of Worcester on January 26, 2005 was 815, which includes individuals sheltered in emergency programs and transitional programs and individuals who were unsheltered. See Affidavit of Grace Carmark, dated July 5, 2006. Approximately one year later, on January 25, 2006, the total homeless population in the City of Worcester was 854, which, again, includes individuals sheltered in emergency programs and transitional programs and individuals who were unsheltered. Id.

These measures of the numbers of putative class members are well above the generally recognized 40-class-member benchmark. See 5 Moore's Federal Practice, § 23.22[3][a] at 23-63 (3d ed. 1997)(noting that classes with more than 40 members generally satisfy the numerosity requirement). These figures represent a class far larger than many other previously certified classes. See, e.g., Arkansas Educ. Ass'n. v. Board of Educ., 446 F.2d 763 (8th Cir. 1971)(class of 20 teachers certified); Cypress v. Newport News Hosp., 375 F.2d 648 (4th Cir. 1967)(18 members sufficient to certify class); Sabala v. Western Gillette, 362 F. Supp. 1142 (S.D. Tex. 1973)(26 class members sufficient); see also Weaver v. Reagan, 701 F. Supp. 717, 721 (W.D. Mo. 1988)(seven actual denials sufficient where class also included future denials).

5

Moreover, the figures stated above are a conservative estimate of the number of putative class members. The figures represent only those individuals sheltered in emergency programs and transitional programs and individuals who were unsheltered. See Affidavit of Grace Carmark. By contrast, the library's policies apply to "temporary residences," as well as to residents of shelters, transitional housing programs, teen/children's programs and other facilities, as the library has so defined, whether or not they appear on the library's list. Thus, given the vagueness of the library's terms and the lack of minimal standards guiding their enforcement, the number of putative class members could be substantially higher than the figures of 815 and 854 described supra.

The fact that the members of the class are not clearly identifiable supports rather than weighs against proceeding as a class action. Yaffe, 454 F.2d at 1366; Poe v. Menghini, 339 F. Supp. 986, 990 (D. Kan. 1972). Fluid or fluctuating group numbers also weigh in favor of showing impracticability of joinder. Arthur v. Starrett City Associates, 98 F.R.D. 500, 505-06 (E.D.N.Y. 1983). See Advertising Special. Nat. Ass'n v. Federal Trade Com'n, 238 F.2d 108, 119 (1st Cir 1956)(numerosity claim strengthened where associational class members were not fixed in number, but changed from year to year).

The court may also consider other factors beside numerosity to determine whether joinder is impracticable. These factors include the ability of the putative class members to bring their own actions, geographical diversity, and the type of relief sought. Jordan v. Los Angeles, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982); see also National Ass'n of Radiation Survivors, 111 F.R.D. at 599. Courts have also looked to the fact that the putative class is not a stagnant one, but instead one that will expand over time. See Weaver v. Reagan, 701 F. Supp. 717 (W.D. Mo. 1988).

6

In the case at bar, joinder is impracticable. Class members reside in more than 26 different sheltering programs. See Affidavit of Grace Carmark. The shelters and programs vary significantly, some offering just overnight beds while others offer complete apartment-based living arrangements in which individuals and families reside for years. Similarly, the shelters themselves exist to serve a variety of purposes, from general family transitional shelters to shelters supporting those recovering from substance abuse, victims of domestic violence, and sufferers of AIDS/HIV, to programs serving veterans, children and teens. Notwithstanding the orientation of the shelters and programs, the residents of the shelters continue to change at regular intervals and thus the class members will continuously change. Joinder of such a diverse and fluctuating population is impracticable.

Lastly, burdened by the challenges of poverty and disenfranchisement, the class members are in a position that makes advocating for themselves through individual actions impracticable. The homeless are generally impoverished, with an average monthly income from any source, including work, public assistance and begging, of under $200. Foscarinis, Maria, "Downward Spiral: Homelessness and Its Criminalization," 14 Yale L. & Pol'y Rev. 1, 6 (1996). Furthermore, a significant number of homeless people are disabled. Id. In studies from across the country, about 23 to 30% of the adult homeless population suffers from severe mental illness. Id. About 17% are physically disabled. Id. at 7. Moreover, homeless people tend to be socially isolated. Id. Few live with a spouse or other adult partner. Id. About 24% have no contact with either friends or relatives. Id. Such severe poverty, pervasive levels of physical and mental disabilities and lack of regular contact with close friends or relatives who could otherwise provide emotional, financial or logistical support in the pursuit of individual lawsuits make

7

individual actions in this context impracticable. In light of these factors, the class is sufficiently numerous that joinder is impracticable.

        2)    The Class Members Share Common Questions of Law and Fact

To satisfy Rule 23(a)(2), "[t]he interests and claims of the various plaintiffs need not be identical. Rather, the commonality test is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members." Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 422 (6th Cir.1998). There is no requirement that all questions be common to the class, see Blackie v. Barrack, 524 F.2d 891, 902 (9th Cir. 1975), and only when no common question exists should class certification be denied. Yaffe, 454 F.2d at 1366. Because only one common question is required, courts typically find the requirement readily met. Duhame v. John Hancock Mutual Life Ins. Co., 177 F.R.D. 54, 63 (D. Mass. 1997)(low hurdle easily surmounted).

Commonality refers to the defendants' conduct in relation to the plaintiffs. Adamson v. Bowen, 855 F.2d 668, 676 (10th Cir. 1988); Appleyard v. Wallace, 754 F.2d 955, 958 (11th Cir. 1985); Milonas v. Williams, 691 F.2d 931, 938 (10th Cir. 1982). Where the question of law "refers to standardized conduct of the defendant towards members of the proposed class, commonality is usually met." Curtis v. Commissioner, Maine Dept. of Human Servs., 159 F.R.D. 339, 341 (D. Me. 1994).

Similarly, where plaintiffs seek class-wide injunctive and declaratory relief, the very nature of the relief "often present[s] common questions satisfying Rule 23(a)(2)." 7A Wright, Miller, & Kane, Federal Practice & Procedure, 1763 at 201. Thus, class actions that seek injunctive and declaratory relief against system-wide government policies usually satisfy

commonality. <u>See, e.g.</u>, <u>Baby Neal ex rel. Kanter v. Casey</u>, 43 F.3d 48, 60 (3d Cir. 1994); <u>United States v. Davis</u>, 756 F. Supp. 1162, 1168 (E.D. Wis. 1991).

In this case, the library has enforced a policy that applies in the same way to residents of homeless shelters, transitional housing programs, teen/children's programs and other facilities. All of the members of the proposed class have been or may be affected by the defendants' policy, which defendants purport to apply on a uniform basis to all temporary residents.

Further, plaintiffs seek class-wide injunctive and declaratory relief, and have common legal claims. For instance, the library's policy restricting borrowing privileges for anyone who lives, or will in the future live, in a shelter, transitional housing program, or teen/children's program deprives, or has the potential to deprive, individuals of equal access to the information, facilities and services of the Worcester Public Library, thereby compromising their right to receive information, without regard to their residency and/or homelessness status, in violation of the First and Fourteenth Amendments of the U.S. and Articles 1, 6, 7 and 16 of the Declaration of Rights of the Massachusetts Constitution. By not providing the individuals notice and an opportunity to meaningfully challenge the library's policy, including its determination of the individuals as temporary residents, the library deprives the individuals of their due process rights in violation of Article 14 of the United States Constitution and Article 10 of the Declaration of Rights of the Massachusetts Constitution.

In light of the above, there are the questions of law or fact common to the proposed class in the case, satisfying the requirements of Rule 23(a)(2).

3)      The Claims of the Named Representatives Are Typical of Those of the Class

The third prerequisite to class certification under Rule 23(a) is that the representatives' claims for relief be typical of the claims of the unnamed class members. Fed. R. Civ P. 23(a)(3).

9

Typicality requires that the class representatives generally "possess the same interests and suffer the same injury" as the unnamed members and not that the named plaintiffs present identical claims. General Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 156 (1982)(citation omitted); accord Modell v. Eliot Savings Bank, 139 F.R.D. 17, 22 (D. Mass. 1991).

To satisfy the typicality requirement, the class representatives' injuries must arise from the same event or course of conduct as the injuries of other class members, and their claims must be based on the same legal theory. Id. "The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs." Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass.1988)(citation omitted).

Factual differences amongst class members' particular needs or conditions are not a bar to satisfying typicality as long as the legal theories upon which the members rely are sufficiently similar. See Doe v. Chiles, 136 F.3d 709 (11th Cir. 1998)(certifying class despite a variety of services to which the class members were entitled through community-based waiver programs); Guckenberger v. Boston University, 957 F. Supp. 306, 326 (D. Mass. 1997)(certifying class of learning-disabled students challenging school's special needs program even though students had different disabilities requiring different accommodations).

The typicality requirement, like commonality, has been liberally construed by the courts. See, e.g., Griffin v. Burns, 570 F.2d 1065, 1073 (1st Cir. 1978)(finding that, even if class members were not all aggrieved by the contested voting practice, typicality does not require such precision); Neff v. VIA Metro. Trans. Auth., 179 F.R.D. 185, 194 (W.D. Tex. 1998); Celestine v. Citgo Petroleum Corp., 165 F.R.D. 463, 467 (W.D. La. 1997); In re Bank of Boston Corp. Securities Litig., 762 F. Supp. 1525, 1532 (D. Mass. 1991)("[T]o be considered typical, a named class member need not show substantial identity between his claims and those of the absent class

10

members."). In challenges to government policies, typicality is satisfied as long as the named plaintiffs are affected by the same statute or regulation as the putative class members. <u>See Baby Neal ex rel. Kanter</u>, 43 F.3d at 56 (finding typicality satisfied in challenge to extension of food stamp disqualification period); <u>Curtis</u>, 159 F.R.D. at 340; <u>Goodnight v. Shalala</u>, 837 F. Supp. 1564, 1583 (D. Utah 1993)(finding typicality satisfied in challenge to denial of disability benefits).

In the present case, Plaintiffs Ms. Doe, Ms. Lindgren and Mr. Moyer have been denied the ability to borrow more than two items at a time from the Worcester Public Library on the basis of their address and/or residency status. The course of conduct underlying such restriction is the defendants' policy, which similarly applies to the proposed plaintiff class. The harm to the plaintiffs arising out of such a denial is less than full and equal access to the information, facilities and services of the Worcester Public Library, based on their residency and/or homelessness status, in violation of the due process clauses of both the federal and state constitutions; the equal protection clauses of both the federal and state constitutions; the free speech provisions of both the federal and state constitutions; and M.G.L. c. 78, section 33.

The legal theories underlying the individual actions of the named plaintiffs are identical to those of the members of the plaintiff class. They arise out of the library's same course of conduct in restricting full and equal access to the information, facilities and services of the Worcester Public Library, without regard to residency and/or homelessness status, and such conduct results in the same harm to the members of the plaintiff class as it does the named plaintiffs. Therefore, the typicality requirement has been satisfied.

11

4)    Class Representatives Fairly and Adequately Represent the Interests of the Class

The last prerequisite under Rule 23(a) is a requirement that the representative plaintiffs

fairly and adequately represent the class. Fed. R. Civ. P. 23(a)(4). This requirement has two

parts: (1) whether the interests of the representative parties will conflict with the interests of any

class members; and (2) whether the representative parties' counsel is "qualified, experienced and

able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d

124, 130 (1st Cir.1985)(citations omitted), cert. denied, 476 U.S. 1172, 106 S.Ct. 2896, 90

L.Ed.2d 983 (1986).

The counsel representing the class have the skills, experience and resources to adequately

represent the interests of the class. Legal Assistance Corporation of Central Massachusetts

("Legal Assistance") is funded by the state to provide free civil legal assistance to elder and low-

income individuals in Worcester County.  Legal Assistance has substantial experience in both

state and federal court litigating for the homeless and disenfranchised in Worcester County,

dating back to before its founding in 1982 when Central Massachusetts Legal Services and the

Legal Aid Society of Worcester merged.

The American Civil Liberties Union of Massachusetts ("ACLUM") is a non-profit

organization of over 12,000 members, whose purpose is to defend and protect fundamental

civil rights and civil liberties guaranteed by state and federal constitutions and laws. ACLUM

lawyers provide representation in approximately 70 cases in the courts each year.  Further,

ACLUM has long been involved in litigation challenging discriminatory practices against

protected classes and interference with the exercise of fundamental rights. These have included

Personnel Adminstrator v. Feeney, 442 U.S. 256 (1979)(gender discrimination); Massachusetts

Electric Company v. Massachusetts Commission Against Discrimination, 375 Mass.160 (1978)

12

(pregnancy discrimination), School Committee of Springfield v. Board of Education, 366 Mass. 315 (1974)(race discrimination); and Jones v. Roe, 33 Mass. App. Ct. 660 (1992)(rejecting tradition of gender-based presumption in favor of father for surname of child).

Plaintiffs' counsel believe that their resources are adequate to represent the class competently and that they have no other professional commitments that are antagonistic to, or would detract from, their efforts to seek a favorable decision for the class in this case.

Plaintiffs also assert that the class representatives do not have antagonistic or conflicting interests with the unnamed class members. The named plaintiffs have all suffered the same injury as a result of the defendants' policies: the restriction on their ability to use equally and fully the information, facilities and services of the Worcester Public Library, without regard to their residency and/or homelessness status. Furthermore, the named plaintiffs each seek the same remedy: declaratory and injunctive relief ordering the defendants to rescind the policy. While class members may have suffered to varying degrees depending upon their use of the library, the injury suffered and relief required ensure that the named plaintiffs can fully and adequately represent the legal rights and seek remedies to which they believe all members of the class are entitled.

## B.     The Action is Maintainable Under Rule 23(b)

Once the plaintiffs have met the prerequisites of Rule 23(a), they need only satisfy one criterion under Rule 23(b). Plaintiffs rely on subsection (2), asserting that the defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b). Rule 23(b)(2) has been found "uniquely suited to civil rights actions." Yaffe, 45 F.2d at 1366. Where injunctive relief is appropriate with respect to the whole class,

13

certification is proper. See Dionne v. Bouley, 757 F.2d 1344, 1356 (1st Cir. 1985). Thus, where the plaintiffs allege a "class-wide discrimination claim [that] is susceptible to a single proof and subject to a single injunctive remedy," the case is appropriate for Rule 23(b)(2) certification. 6A Fed. Proc., L. Ed. 12:192 (citing Senter v. General Motors Corp., 532 F.2d 511 (3d Cir. 1976)).

In this case, the plaintiffs seek injunctive relief to remedy class-wide constitutional and statutory violations by the defendants against residents of homeless shelters, transitional housing programs, adolescent programs and other facilities. The defendants engage in these violations by denying full and equal access to the information, facilities and services of the Worcester Public Library based solely on the class members' residency and/or homelessness status. The plaintiffs' claims are therefore susceptible to a single proof and subject to a single injunctive remedy. Thus, class certification is appropriate under Rule 23(b)(2).

### III. CONCLUSION

For the above reasons, the plaintiffs request that this Court certify a class in this matter as above described.

> Respectfully submitted
> On behalf of plaintiffs,

Date: July 6, 2006

> Jonathan L. Mannina, BBO # 636492
> Kate J. Fitzpatrick, BBO # 664711
> Legal Assistance Corporation
>     of Central Massachusetts
> 405 Main Street
> Fourth Floor
> Worcester, Massachusetts 01608
> Telephone: (508) 752-3718

14

Date: July 6, 2006

John Reinstein, BBO # 416120
American Civil Liberties Union
  of Massachusetts
211 Congress Street, Suite 300
Boston, MA 02110
Telephone: (617) 482-3170

## CERTIFICATE OF SERVICE

I, Jonathan L. Mannina, attorney for the plaintiffs, hereby certify that I have on this 6th day of July, 2006, mailed the within, postage prepaid, to David M. Moore, Esq, City Solicitor, 455 Main Street, Room 301, Worcester, MA 01608.

Dated: July 6, 2006

Jonathan L. Mannina

15

# Borrowing Criteria for Homeless Shelter and Transitional Housing Residents

The first level of criteria applies to residents of **Homeless Shelters**. These residents are transient with no permanent address. The Worcester Public Library limits those residents of shelters that have been contacted by the library to 2 items per checkout. Residents of shelters in the first level will be given a handout explaining their borrowing privileges and encouraging them to let us know when they have found permanent housing so their card can be updated for unrestricted borrowing.

The second level of criteria is for residents of **Transitional Housing Programs**. While in a **Transitional Housing Program**, residents are limited to two items per checkout, unless the resident presents a letter signed by the director of their program allowing the patron full borrowing privileges and accepting full responsibility for the safe return of all materials, including lost book payments. The directors of **Transitional Housing Programs** may also opt to sign up for a **Firm Card** that transfers the responsibility for the safe return of materials from the resident to the agency.

The third level of criteria applies to **Teen/Children's Programs** that serve children less than 18 years of age. These agencies will be strongly encouraged by letter with a follow-up phone call to have a **Firm Card** in place. WPL provides **Firm Cards** to agencies willing to accept financial responsibility for their borrowing by their residents.

Library volunteers are granted full borrowing privileges, regardless of housing status.

12/08/05

EXHIBIT B

# Transitional Housing Programs

| | |
|---|---|
| 305 Belmont St | Worcester State Hospital |
| 142 Burncoat St | Faith House |
| 510 Cambridge St | The Village - Housing Alliance |
| 21 Catherine St | Channing House |
| 9 Chadwick St | Oasis House |
| 16-18 Cottage St | Frances Perkins Home |
| 23 Crown St | Abby's House |
| ▬▬▬▬▬ | Daybreak |
| 87 Elm St | Friendly House Shelter |
| 12 George St | Florence House |
| 10 Hammond St | Crozier House |
| 52 High St | St. Joseph Residence |
| 19 King St | Tides |
| 107 Lincoln St | AdCare |
| 114 Main St | Interfaith Hospitality |
| 660 Main St | Aurora Project (PIP) |
| 77 Mulberry St, Leicester | Nazareth Home |
| 15 Northampton | Linda Fay Griffin House |
| 100 Pine St | Grafton Job Corps |
| 54 Queen St | Shepherd's House |
| 30 Richards St | Dismas House |
| 2 Sigourney St | Sigourney House |

# Teen/Children's Programs

| | |
|---|---|
| 21 Ives St | Starting Point - Price Memorial House |
| 104 Lincoln St | Key Program |
| 60 Miles Rd | Devereux School |
| 27 Vernon St | Starting Point |

# Firm Cards - alpha by agency

| | |
|---|---|
| 41 Randolph Rd | Bridge of Central Mass - School House Program |
| 2 Sigourney St | Community Health Link - Grace House |
| 2-4 Norton St | Key Program |
| 414 Cambridge St | Lutheran Community Services |
| 133 Paine St | Santram House |
| 125 Hartwell St | Seven Hills Work Options |
| Box 1380 Westboro | Westboro Secure Treatment |
| 35 Fruit St | West Side House |
| 1601 Main Leicester | Willis Center - Fresh Start |
| 25 Catherine St | Willis Center - Starting Point |
| 350 Plantation ST | Worc Day Rehab |
| 979 Millbury St | You, Inc. - Bridge Home |
| 979 Millbury St | You, Inc - Carol Schmidt Village |
| 979 Millbury St | You, Inc  - Teen-Parent Program |
| 2 Granite St | You, Inc  - Wentzell Center |

# Homeless Shelters

| | |
|---|---|
| 72 Cambridge St | Salvation Army |
| 217 Cambridge St | Hope House |
| 69 Grove St | Central Mass Veteran's Shelter |
| 701 Main St | PIP  (People in Peril) Shelter |
| 1059 Main St | Jeremiah's Inn |
| 52 Mason St | St. Francis & St.Therese Catholic Worker |



# WELCOME TO THE WORCESTER PUBLIC LIBRARY



**Quick Links**  |  About WPL    Services    Resources    Borrowing    Children    TeenZ  |  **Support**

- Search Catalog
- Hours & Directions
- Your Library Account
- Ask a Librarian
- Online Databases
- Web Resources
- Meeting Rooms
- Talking Book Library
- **Calendar of Events**

Home

Friends

### . **Limits & Fees**

Volunte

#### **Borrowing Limits**

Make a

| | |
|---|---|
| First Time Borrowers & Temporary Residences | 2 |
| CD-ROMs | 2 |
| Videos | 4 |
| DVDs | 4 |
| Compact Discs | 4 |
| Audiocassettes | 4 |
| New and Popular Fiction | 4 |
| Magazines (international language & children's) | 4 |
| Books on Same Subject | 4 |
| Total Items | 40 |

WPL Fo

Books r

#### **Fines**

| | |
|---|---|
| Children (12 years of age and under) | .05 per day |
| Senior Citizens (60+ years of age) | .05 per day |
| Adults | .10 per day |
| Videos &  DVDs | $1.00 per day |

#### **Maximum Overdue Fine**

| | |
|---|---|
| Children/Seniors | $3.00 per item |
| Adults | $3.00 per item |
| Videos & DVDs | $5.00 total |

#### **Maximum Fines--All Items**

| | |
|---|---|
| Children/Seniors | $10.00 per patron |
| Adults | $10.00 per patron |
| Videos & DVDs | $10.00 total |

#### **Replacement Card Fees**

| | |
|---|---|
| Adults | $1 |
| Children / Seniors | $0.50 |