UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, SUZETTE LINDGREN, ANDREW MOYER, on behalf of themselves and all others similarly situated, and MASSACHUSETTS COALITION FOR THE HOMELESS, and CENTRAL MASSACHUSETTS HOUSING ALLIANCE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF WORCESTER, WORCESTER PUBLIC LIBRARY, and WORCESTER PUBLIC LIBRARY BOARD OF DIRECTORS,<br><br>Defendants. | CIVIL ACTION NO.:<br><br>06-40133 |

Doe et al v. City of Worcester et al                                                                                                  Doc. 7

AFFIDAVIT OF GRACE CARMARK

I, Grace Carmark, state the following under penalty of perjury:

1. I am over eighteen years of age and am competent to testify as to the matters set forth herein. I make this affidavit on the basis of my personal knowledge.

2. I am the Executive Director of the Central Massachusetts Housing Alliance ("CMHA"), a nonprofit organization based in Worcester, Massachusetts that supports the homeless and near homeless of Worcester County through the provision of prevention programs, shelter and support services, access to affordable housing, and education.

3. CMHA manages The Village at Cambridge Street, a shelter located at 510 Cambridge Street in Worcester, Massachusetts.

4. I am also the Convener of the Worcester County Continuum of Care, in accordance with the United States Department of Housing and Urban Development ("HUD")'s Homeless Assistance Grants program. HUD's Continuum of Care process seeks to overcome the challenges of institutionalized homelessness through the implementation of a comprehensive and coordinated community-wide approach that is managed or convened by one entity within each Homeless Assistance Grants program.

5. In the course of my duties as Executive Director of CMHA and Convener of the Worcester County Continuum of Care, I prepare and oversee the production of statistics measuring the homeless population in the city of Worcester.

6. The statistics that I prepare and oversee are broken down into the categories of "homeless individuals" and "persons in homeless families with children" as well as by "sheltered" ("emergency" or "transitional") and "unsheltered." For purposes of these statistics, "homeless individuals" "or persons in homeless families with children" are (1) those who lack a fixed, regular and adequate nighttime residence; (2) those who have a primary residence that is a supervised public or privately operated shelter designed to provide temporary living accommodations; or (3) those who are sleeping in places not meant for human habitation such as cars, sidewalks, or abandoned buildings.

7. The term "persons in homeless families with children" means adult members and child members of intact households currently living in the city of Worcester who fall within one of the three groups set out in Paragraph 6.

8. For purposes of these statistics, the term "sheltered" refers to those persons who are living in either an emergency or transitional housing facility or program. "Emergency" is defined as a supervised public or privately operated shelter designed to provide temporary living accommodations (including welfare hotels, congregate shelters, and transitional housing for the mentally ill). "Transitional" is defined as housing which is designed to facilitate the movement of homeless individuals and families to permanent housing within 24 months. "Unsheltered" is defined as those residing in a place not designed for, or ordinarily used as, regular sleeping accommodation for human beings.

9. In the course of my duties as Executive Director of CMHA and Convener of the Worcester County Continuum of Care, on January 26, 2005, I was involved in the preparation of a Point in Time analysis of the homeless population in the city of Worcester. As of that date, the total homeless population of the city of Worcester was 815. There were 398 homeless individuals. Of those 398 persons, 210 were sheltered in emergency programs, 171 were sheltered in transitional programs, and 17 were unsheltered. Additionally, there were 417 persons in homeless families with children. Of those 417 persons, 226 were sheltered in emergency programs and 191 were sheltered in transitional programs. None were unsheltered.

10. Also in the course of my above-mentioned duties, on January 25, 2006, we prepared a Point in Time analysis of the homeless population in the city of Worcester. As of that date, the total homeless population of the city of Worcester was 843. There were 428 homeless individuals. Of those 428 persons, 266 were sheltered in emergency programs, 145 were sheltered in transitional programs, and 17 were unsheltered. Additionally, there

were 415 persons in homeless families with children. Of those 415 persons, 224 were sheltered in emergency programs, and 191 were sheltered in transitional programs.

11. The numbers for the Point in Time analyses in 2005 and 2006 were based on information garnered from 26 emergency or transitional sheltering programs in the City of Worcester.

I declare under penalty of perjury that the foregoing is true and correct.

Grace Carmark

July 5, 2006

CERTIFICATE OF SERVICE

I, Jonathan L. Mannina, attorney for the plaintiffs, hereby certify that I have on this 6th day of July, 2006, mailed the within, postage prepaid, to David M. Moore, Esq, City Solicitor, 455 Main Street, Room 301, Worcester, MA 01608.

Dated: July 6, 2006

Jonathan L. Mannina